Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

**IN THE CIRCUIT COURT OF CHARITON COUNTY, MISSOURI**
**NINTH JUDICIAL CIRCUIT**

| | |
|---|---|
| **SANJAY CHOPRA, individually and as the** ) | |
| **Next Friend of A.C., a minor,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TERRY SEABORN, as the Next Friend of** ) | |
| **D.S.S., a minor,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 24CH-CC00017** |
| ) | |
| **BNSF RAILWAY COMPANY,** ) | |
| **a Foreign For-Profit Corporation,** ) | |
| **Serve Registered Agent:** ) | |
| **Jeffery W. Laney** ) | |
| **2135 E. Sunshine, Suite 203** ) | |
| **Springfield, MO 65804** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MS CONTRACTING, LLC,** ) | |
| **a Missouri Limited Liability Company,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**PLAINTIFFS' FIRST AMENDED PETITION FOR DAMAGES**</u>

COME NOW Plaintiffs, Sanjay K. Chopra, individually, and as Next Friend of A.K.C., and Terry Seaborn, as Next Friend of D.S.S., by and through their attorneys of record, and for their First Amended Petition for Damages against Defendant BNSF Railway Company and Defendant MS Contracting, LLC, hereby allege and state as follows:



Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

## INTRODUCTION

1.     This cause involves the June 27, 2022, derailment of a high-speed (approximately 90 miles-per-hour) National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") train that collided with a dump truck at a dangerous railroad crossing owned and maintained by Defendant BNSF Railway Company at the intersection of its double mainline railroad tracks and County Road 113 in Chariton County, Missouri, just west of Mendon, Missouri (BNSF's "Porche Prairie Crossing").  This incident is referred to herein as the "Train Wreck and Derailment."

## PARTIES

2.     Plaintiff Sanjay K. Chopra was a passenger on the train and was at all times relevant hereto a resident of the State of Wisconsin.

3.     Plaintiff A.K.C. is a minor over the age of fourteen (14). His claims are hereby brought on his behalf by his duly appointed Next Friend, Sanjay Chopra, and he was a passenger on the train and was at all times relevant hereto a resident of the State of Wisconsin.

4.      Plaintiff D.S.S. is a minor over the age of fourteen (14). His claims are hereby brought on his behalf by his duly appointed Next Friend, Terry Seaborn, and he was a passenger on the train and was at all times relevant hereto a resident of the State of Wisconsin.

5.     Defendant BNSF Railway Company ("BNSF") is, and at all times relevant hereto was, a foreign for-profit corporation organized and existing under the laws of Delaware, with its principal place of business in Fort Worth, Texas. Defendant BNSF is

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

registered to do business and regularly conducts business in the state of Missouri. Defendant BNSF acts by and through its agents, servants, and/or employees. Defendant BNSF is engaged in the business of operating a railway system in interstate commerce and in the transportation of freight by railroad in said interstate commerce, and engages in business in Chariton County, Missouri. Defendant BNSF owns, controls, maintains, and operates a railroad running into and through Chariton County, Missouri.

6.      Defendant BNSF may be served with legal process through its Registered Agent, Jeffrey W. Laney, at 2135 E. Sunshine, Suite 203, Springfield, Missouri 65804.

7.      At all relevant times, Defendant BNSF has been a common carrier by railroad engaged in interstate commerce and it owns, controls, and operates a railroad running into and through 28 states of the United States of America, including Illinois, Missouri, Kansas, and other states, including into and through Chariton County, Missouri, and had entered into a contract with Amtrak that created duties and obligations for Defendant BNSF.

8.      Amtrak was not a railroad of this state, and it leased, had a running arrangement, license or made arrangements to operate its engines and cars over BNSF's railroad in this state by permission and agreement with BNSF. Accordingly, BNSF is liable for the actions or inactions of the engineer operating the train involved in the crash. R.S.Mo. § 388.300 and § 388.310.

9.      At all relevant times, Defendant BNSF was obligated by agreement with Amtrak to provide Amtrak with use of Defendant BNSF's tracks, including BNSF's tracks at BNSF's Porche Prairie Crossing in Chariton County, Missouri.

10.     Amtrak and Defendant BNSF entered into a contract in 1996 that was in force

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

and effect on June 27, 2022, which obligated Defendant BNSF with duties and obligations pursuant to the contract.

11.    Pursuant to the contract, Defendant BNSF was obligated to create reasonably safe conditions for the high-speed Amtrak trains traveling on BNSF's tracks, including the tracks where the Train Wreck and Derailment occurred on June 27, 2022.

12.    Pursuant to the contract, Amtrak would pay Defendant BNSF performance payments based on Amtrak's trains meeting scheduled times, and Defendant BNSF would be penalized based on Amtrak's trains failing to meet scheduled times.

13.    By contract between Amtrak and Defendant BNSF, Amtrak's employees, including the Amtrak engineer operating the train on June 27, 2022, were obligated to follow the rules of Defendant BNSF and the directions of BNSF's dispatcher while operating on BNSF's railroad tracks, including while traveling on approach to BNSF's Porche Prairie Crossing on June 27, 2022.

14.    At all relevant times, Amtrak and Defendant BNSF had a contractual agreement that Defendant BNSF have sole control over the operation of Amtrak's trains and Amtrak's employees while Amtrak's trains were operating on Defendant BNSF's tracks, including the Amtrak train involved in the Train Wreck and Derailment at BNSF's Porche Prairie Crossing.

15.    At all relevant times on June 27, 2022, Defendant BNSF directed, supervised, and controlled Amtrak's engineer operating the Train involved in the Train Wreck and Derailment.

16.    At all relevant times on June 27, 2022, Amtrak's engineer was operating the

4

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

Train according to an express or implied agreement with Defendant BNSF, and Defendant BNSF had the right to control Amtrak's engineer operating the Train.

17.     At all relevant times, the Amtrak engineer operating the train involved in the Train Wreck and Derailment was acting in the course and scope of his agency with Defendant BNSF.

18.     Missouri recognizes that a defendant can assume a duty. *Martin v. Mo. Highway and Transp. Dept.*, 981 S.W.2d 577, 580 (Mo. App. W.D. 1998). If a defendant assumes a duty, by contract or by conduct, the defendant can be liable for injuries caused by the unsafe performance of that assumed duty. *Kilventon v. United Mo. Bank*, 865 S.W.2d 741, 743 (Mo. App. W.D. 1993).

19.     Defendant BNSF assumed a contractual duty to provide a safe crossing through its contractual Operating Agreement with Amtrak. The Operating Agreement includes provisions that Defendant BNSF must provide and maintain safe track, which includes grade crossings.

20.     In the alternative, Defendant BNSF voluntarily assumed a duty. The Missouri Supreme Court has adopted section 323 from the Restatement (Second) of Torts, which imposes a duty on those who voluntarily render services to another. *Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 132 (citing *Stanturf v. Sipes,* 447 S.W.2d 558, 561–62 (Mo.1969)). Missouri case law further supports the concept that one who acts voluntarily or otherwise to perform an act, even when there was no duty to act originally, can be held liable for the negligent performance of that act. *See id.*

Section 324A of the Second Restatement of Torts provides:

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

224 Restatement (Second) of Torts § 324A (1965).

21.    Defendant MS Contracting, LLC ("MS Contracting") is, and was at all times relevant hereto, a Missouri Limited Liability Company with its principal place of business in Brookfield, Linn County, Missouri.  Defendant MS Contracting has already been properly served with the underlying lawsuit.

22.    At the time of the Train Wreck and Derailment on June 27, 2022, Billy Dean Barton, II ("Barton") was operating a truck owned by Defendant MS Contracting.

23.    At all times relevant, Barton was acting in the course and scope of his employment with Defendant MS Contracting.

## JURISDICTION AND VENUE

24.    Plaintiffs hereby incorporate by reference each and every preceding paragraph contained in Plaintiffs' First Amended Petition as if fully stated herein.

25.    Jurisdiction is proper before this Court pursuant to R.S.Mo. § 506.500 because the tortious and negligent conduct described herein occurred in Chariton County, Missouri.

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

26.     Venue is proper in this Court pursuant to R.S.Mo. § 508.010.4 because the tortious and negligent conduct of Defendants occurred in Chariton County, Missouri, and Plaintiffs were injured in Chariton County, Missouri.

27.     Defendant MS Contracting is a Missouri Limited Liability Company with its principal place of business in Missouri, and has already been properly served with the underlying lawsuit.

28.     This case is not removable based on diversity jurisdiction due to the existence of a Missouri resident defendant. 28 U.S.C. § 1441(b); *Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1145 (8th Cir. 1992).

## FACTS OF THE COLLISION

29.     Plaintiffs hereby incorporate by reference each and every preceding paragraph contained in Plaintiffs' First Amended Petition as if fully stated herein.

30.     This case arises from the Train Wreck and Derailment that occurred on June 27, 2022, at BNSF's Porche Prairie Crossing near Mendon, Missouri, in Chariton County.

31.     In Chariton County, there is a public road called County Road 113, or Porche Prairie Avenue, which intersects two parallel mainline BNSF Railway Company tracks over which trains operate at high speeds in both directions; this railroad crossing is identified as U.S. DOT No. 005284Y, and it is situated just west of Mendon, Missouri.

32.     The Porche Prairie Crossing is owned and maintained by Defendant BNSF. The land on either side of the tracks (commonly referred to as the "right-of-way") is owned and maintained by Defendant BNSF.

33.     Defendant BNSF owns the tracks, railroad crossing, and right-of-way

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

property at the Porche Prairie Crossing, and Defendant BNSF has a duty to keep the Porche Prairie Crossing, its railroad tracks, and its right-of-way reasonably safe for the public and to construct and maintain good and sufficient crossings.

34.    The property Defendant BNSF owns at the Porche Prairie Crossing runs parallel to the BNSF tracks and it extends 50 feet in each direction perpendicular to the centerline of the southern set of tracks.

35.    Because BNSF's Porche Prairie Crossing is situated at a skewed angle, Defendant BNSF owns approximately 72 feet of the roadway from the centerline of Mainline track 2 (the southernmost set of tracks) on the south side of the tracks.

36.    BNSF's Porche Prairie Crossing is a "passive" crossing with no "active" warning devices, such as automatic flashing lights and gate arms, to alert a driver to the presence of an oncoming high-speed ninety (90) mile per hour train.

37.    BNSF's Porche Prairie Crossing and right-of-way has a steep grade, or "hump" on the roadway approach which made the Porche Prairie Crossing difficult to traverse for motorists and violated industry standards.

38.    BNSF's Porche Prairie Crossing is situated on a skewed angle of 45 degrees to the road which makes it difficult for motorists to see down the tracks while trying to traverse the Porche Prairie Crossing.

39.    The public road on the right-of-way at BNSF's Porche Prairie Crossing is narrow and had significant drop-offs on either side which made BNSF's Porche Prairie Crossing difficult to traverse for motorists.

40.    BNSF's Porche Prairie Crossing surface, including the surface between the

two railroad tracks, was rough, uneven, and poorly maintained which made the Porche Prairie Crossing difficult to traverse for motorists.

41.    At all relevant times, visual obstructions, such as vegetation, existed on Defendant BNSF's right-of-way at the Porche Prairie Crossing

42.    The standards found in the American Railway Engineering and Maintenance-of-Way Association ("AREMA") and the American Association of State Highway and Transportation Officials ("AASHTO") provide that the surface of the roadway approaching a crossing should not be more than three (3) inches above or below the elevation of the top rail, at a point thirty (30) feet from the outermost rail. Similarly, Missouri state regulations provide that the surface of the roadway not be more than three (3) inches above or six (6) inches below the elevation of the top rail, at a point thirty (30) feet from the outermost rail (or that the road must comply with AREMA standards). The approaches to BNSF's Porche Prairie Crossing were more than 11 times (39 inches below the elevation of the top rail at 30 feet) out of compliance with these standards/regulations.

43.    Members of the public, including local residents, had complained to Defendant BNSF about the dangerous nature of the BNSF Crossing before the Train Wreck and Derailment.

44.    For several years before the derailment detailed herein, members of the public and local government requested Defendant BNSF to remove or fix the visual obstructions and dangerous characteristics of the Porche Prairie Crossing.

45.    One such resident was Mike Spencer, a longtime farmer in Mendon, Missouri, who raised safety complaints regarding the subject crossing and told Defendant

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

BNSF directly that its Porche Prairie Crossing was dangerous.

46.    Approximately two weeks before the derailment, Mr. Spencer posted a video of the subject crossing to his Facebook account, writing "We have to cross [the subject crossing] with farm equipment to get to several of our fields… We have been on the [Defendant BNSF] for several years about fixing the approach by building the road up, putting in signals, signal lights or just cutting the brush back."

47.    Shortly after Mr. Spencer posted the video, his wife, Sheryl, publicly commented, "They are waiting till someone gets hit."

48.    In an interview with the Kansas City Star, Mr. Spencer indicated one concern "was that the approach on [the subject crossing] is very, very steep… You can't see over it… It's very treacherous… There's no way you can pull up there and stop and go on."

49.    Another local farmer, Daryl Jacobs, told the Kansas City Star, "[The subject crossing] needs arms on it or signals… It's so dang steep… And this dang brush along these railroad tracks all needs to be cleared back."

50.    Defendant BNSF determined in 2005 that BNSF's Porche Prairie Crossing should be closed but failed to take any action to protect the public, including train passengers, from the dangerous conditions at the Porche Prairie Crossing.

51.    In 2011, Defendant BNSF knew and announced in a PowerPoint presentation that the Porche Prairie Crossing, along with other crossings on the Marcelene Subdivision, should either be closed or have automatic flashing lights and gates installed.

52.    Prior to the Train Wreck and Derailment on June 27, 2022, Defendant BNSF did not close its Porche Prairie Crossing and did not install automatic flashing lights and

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

gates at the Porche Prairie Crossing.

53.    Defendant BNSF could have used its own money to install automatic flashing lights with gate arms at the Porche Prairie Crossing, but Defendant BNSF instead chose to let this Porche Prairie Crossing remain unprotected by automatic warning devices.

54.    The fact that Defendant BNSF may attempt to utilize government programs to subsidize the cost of automatic flashing lights and gate arms does not negate Defendant BNSF's duty to exercise reasonable care to protect members of the public at the Porche Prairie Crossing, including passengers on the Train. *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 235-36 (Mo. 2001).

55.    The Missouri Department of Transportation (MoDOT), on July 7, 2016, informed Defendant BNSF in writing that stop signs were not authorized as warning devices at the Porche Prairie Crossing, and MoDOT directed Defendant BNSF to take down the stop signs; BNSF did not comply with this directive.

56.    At the time of the Train Wreck and Derailment, the stop sign on the north side of the Porche Prairie Crossing was not installed and was not operating.

57.    Defendant BNSF has a duty to observe, inspect, repair, and replace any missing signage at the Porche Prairie Crossing.

58.    Defendant BNSF had actual knowledge of the missing stop sign since May 30, 2022, as noted by one of its track inspectors in his daily logbook. Defendant BNSF has multiple track inspectors whose responsibility was to look for missing signage, despite this, no efforts were ever made by BNSF in the month before the Wreck and Derailment to replace the missing stop sign.

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

59.     Defendant BNSF's rules require flagging operations to occur at a railroad crossing when signage is missing, either by a "stop-and-flag" procedure whereby the train stops before the crossing and then flags for traffic as the train proceeds through, or by placing a flagman at the crossing until the signage can be replaced; neither one of these safety procedures was done by Defendant BNSF at the time of the Train Wreck and Derailment.

60.     Defendant MS Contracting owns and operates a contracting company which is located at 25851 County Road M in Brookfield, Missouri 64248.

61.     Prior to, and on June 27, 2022, Barton was an employee of Defendant MS Contracting; unfortunately, Barton was killed in this collision.

62.     On June 27, 2022, on behalf of and at the direction of Defendant MS Contracting, Barton was operating a Kenworth dump truck which was owned by MS Contracting bearing VIN# 1NKWXBEX97J177480 (the "Dump Truck") performing rock hauling service in Chariton County, Missouri.

63.     As he approached the Porche Prairie Crossing, while operating the Dump Truck loaded with rock northbound on Porche Prairie Road, Barton attempted to drive northbound across the Porche Prairie Crossing.

64.     At the same time Barton was attempting to cross the Porche Prairie Crossing northbound, an approaching Amtrak Southwest Chief passenger train ("the Train") was traveling toward BNSF's Porche Prairie Crossing in a northeasterly direction, rapidly approaching at a rate of speed of approximately ninety (90) miles per hour.

65.     The Train consisted of two locomotives, eight passenger cars, and carried

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

over 280 passengers and crew.

66.    As Barton attempted to cross BNSF's Porche Prairie Crossing, the Train struck the Dump Truck causing a violent collision, resulting in the Dump Truck being completely destroyed, and causing the Train to derail from the tracks.

67.    Testing performed after the collision found a vehicle similar to the Dump Truck took more than 33 seconds to clear both tracks at BNSF's Porche Prairie Crossing from a stopped position while traveling northbound.

68.    The collision between the Train and the Dump Truck – and the Train's subsequent derailment – caused fatalities and personal injuries to the passengers on the Train.

69.    The Train was running more than one hour behind schedule at the time of the Train Wreck and Derailment.

70.    Plaintiff Sanjay Chopra was a passenger on the Train at the time of the collision and derailment and was injured by the Train Wreck and Derailment. Plaintiff's ticket to ride the train was purchased over the phone by a third party as part of a "group" ticket package. Plaintiff did not agree to any terms and conditions with Amtrak, and Plaintiff did not authorize any other person to agree to any terms and conditions with Amtrak, when purchasing the ticket. Plaintiff had no communication with Amtrak when purchasing the ticket.

71.    Plaintiff A.K.C. was a passenger on the Train at the time of the collision and derailment and was injured by the Train Wreck and Derailment. Plaintiff's ticket to ride the train was purchased over the phone by a third party as part of a "group" ticket package.

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

Plaintiff did not agree to any terms and conditions with Amtrak, and Plaintiff did not authorize any other person to agree to any terms and conditions with Amtrak, when purchasing the ticket. Plaintiff had no communication with Amtrak when purchasing the ticket.

72.    Plaintiff D.S.S. was a passenger on the Train at the time of the collision and derailment and was injured by the Train Wreck and Derailment. Plaintiff's ticket to ride the train was purchased over the phone by a third party as part of a "group" ticket package. Plaintiff did not agree to any terms and conditions with Amtrak, and Plaintiff did not authorize any other person to agree to any terms and conditions with Amtrak, when purchasing the ticket. Plaintiff had no communication with Amtrak when purchasing the ticket.

73.    Plaintiffs did not agree to arbitrate any of these claims arising from the Train Wreck and Derailment.

74.    Plaintiff's claims arising from the Train Wreck and Derailment are not subject to arbitration based on any alleged agreement between Plaintiffs and Amtrak.

75.    Plaintiff did not knowingly and voluntarily enter into any agreement to arbitrate their claims arising from the Train Wreck and Derailment.

76.    Amtrak is a government agency and any alleged arbitration agreement between Amtrak and Plaintiffs is unconstitutional.

77.    At all relevant times, the negligent acts and omissions stated herein were committed directly by Defendants and/or by employees, staff, agents, or servants of Defendants who were acting within the scope and course of their employment with

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

Defendants.

## COUNT I – NEGLIGENCE
### (Defendant BNSF)

78.    Plaintiffs hereby incorporate by reference each and every preceding paragraph contained in Plaintiffs' First Amended Petition as if fully stated herein.

79.    Under the doctrines of vicarious liability and *respondeat superior*, Defendant BNSF is responsible and liable for the action or inactions of its employees and agents who were acting within the course and scope of their employment with Defendant BNSF, including those employees and agents that allowed or created the dangerous conditions at BNSF's Porche Prairie Crossing, and including the engineer operating the Train involved in the Train Wreck and Derailment.

80.    At all relevant times, Amtrak and Defendant BNSF had a contractual agreement that Defendant BNSF have sole control over the operation of Amtrak's trains and Amtrak's employees while Amtrak's trains were operating on Defendant BNSF's tracks, including the Amtrak train involved in the Train Wreck and Derailment at BNSF's Porche Prairie Crossing.

81.    At all relevant times on June 27, 2022, Defendant BNSF directed, supervised, and controlled Amtrak's engineer operating the Train involved in the Train Wreck and Derailment.

82.    At all relevant times on June 27, 2022, Amtrak's engineer was operating the Train according to an express or implied agreement with Defendant BNSF, and Defendant BNSF had the right to control Amtrak's engineer operating the Train.

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

83.    At all relevant times, the Amtrak engineer operating the train involved in the Train Wreck and Derailment was acting in the course and scope of his agency with Defendant BNSF.

84.    Defendant BNSF owes the public, including those who travel through the Porche Prairie Crossing by motor vehicle or passenger train, a duty of reasonable care.

85.    Defendant BNSF has the duty to construct and maintain the Porche Prairie Crossing and its right-of-way, including the relevant roadway approaches thereto, in a reasonably safe condition.

86.    Defendant BNSF has a duty to exercise reasonable care to protect persons using the Porche Prairie Crossing if it becomes aware that its railroad Crossing is dangerous. *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 237 (Mo. 2001).

87.    Defendant BNSF has a duty to use reasonable care to install, maintain, and operate adequate warning devices at its Porche Prairie Crossing.

88.    Defendant BNSF has a common law duty to use reasonable care in providing adequate warning of its railroad crossings, including BNSF's Porche Prairie Crossing.

89.    Defendant BNSF had a duty to maintain and clear its right-of-way at the Porche Prairie Crossing of vegetation, undergrowth, or other visual obstructions pursuant to the Missouri law, BNSF's own rules, and industry standards.

90.    Defendant BNSF did regularly inspect and maintain its Porche Prairie Crossing which gave Defendant BNSF knowledge of the dangerous characteristics of the Porche Prairie Crossing.

91.    Defendant BNSF operated multiple trains through its Porche Prairie Crossing

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

on a daily basis, which gave Defendant BNSF knowledge of the dangerous characteristics of the Porche Prairie Crossing.

92.    Defendant BNSF knew, or should have known, of the dangerous and defective conditions at its Porche Prairie Crossing in sufficient time prior to the Train Wreck and Derailment to use reasonable care to protect against said dangerous and defective conditions.

93.    Defendant BNSF knew or should have known that the Porche Prairie Crossing was dangerous for motorists approaching from either direction and for passengers on trains traveling on the tracks in either direction.

94.    Before the Train Wreck and Derailment on June 27, 2022, Defendant BNSF was aware of past train wrecks involving trucks and other large vehicles that had difficulty traversing its railroad crossings with characteristics similar to BNSF's Porche Prairie Crossing.

95.    Defendant BNSF knew that passengers on trains would be traveling through the Porche Prairie Crossing at speeds up to ninety (90) miles per hour.

96.    Defendant BNSF has a duty to inspect the Porche Prairie Crossing and its right-of-way.

97.    Defendant BNSF's employees travel over the Porche Prairie Crossing multiple times each day.

98.    Defendant BNSF had actual knowledge that the stop sign on the north side of BNSF's Porche Prairie Crossing was missing for at least 27 days before the Train Wreck and Derailment, yet Defendant BNSF did not replace the stop sign and Defendant BNSF

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

did not initiate its stop and flag procedure for the Amtrak Train, as mandated by Defendant BNSF's rules.

99.     Defendant BNSF has a duty to maintain its Porche Prairie Crossing and its right-of-way in compliance with Missouri law, industry standards, and BNSF's own rules.

100.    Defendant BNSF failed to properly inspect and maintain its Porche Prairie Crossing as required because Defendant BNSF allowed several dangerous conditions to exist, including but not limited to: limited sight distance, steep vertical roadway approach, severe angle that made it difficult to see an approaching train, steep grade that did not comply with industry standards, rough and unstable crossing surface, and rough and uneven crossing approach.

101.    Defendant BNSF, having duties of care established by law, its own rules and standards, and railroad industry standards, breached those duties by engaging in the following negligent acts and/or omissions:

A.      BNSF failed to construct and maintain BNSF's Porche Prairie Crossing in a good and sufficient manner where its railroad crosses a public road;

B.      BNSF allowed for an unusually hazardous crossing because it did not afford motorists adequate sight distance to observe trains approaching the Porche Prairie Crossing;

C.      Defendant BNSF knew that passengers on trains would be traveling across BNSF's Porche Prairie Crossing at train speeds up to ninety (90) miles per hour yet failed to maintain the Porche Prairie Crossing

18

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

in a reasonably safe condition under the circumstances;

D.      BNSF failed to maintain the Porche Prairie Crossing and its right-of-way in a reasonably safe condition;

E.      BNSF failed to maintain the Porche Prairie Crossing and its right-of-way in a safe and reasonable condition in violation of the common law and 7 CSR 265-8.130;

F.      BNSF failed to train and supervise its employees about BNSF's rules and industry standards with respect to the proper maintenance of public railroad crossings;

G.      BNSF failed to comply with industry standards, including by not limited to the standards set forth by the AREMA and the AASHTO;

H.      BNSF failed to clear the Porche Prairie Crossing and its right-of-way of brush, trees, vegetation, debris, and other visual obstructions that interfered with the visibility of approaching trains and motor vehicles;

I.      BNSF failed to remove vegetation to account for the severe angle of the Porche Prairie Crossing that made it difficult for motorists to see an oncoming train;

J.      BNSF failed to reasonably maintain and inspect the railroad tracks and right-of-way at and around the Porche Prairie Crossing and correct dangerous conditions that were present at and around the Porche Prairie Crossing;

K.      BNSF failed to adequately train its employees to inspect, report, and

maintain the Porche Prairie Crossing and right-of-way in accordance with Missouri law, industry standards, and BNSF's own rules;

L.     BNSF failed to adequately inspect, report, and maintain the Porche Prairie Crossing, including the track, margins of the track, crossing surface, and roadways within BNSF's right-of-way as required by Missouri law, industry standards, and BNSF's own rules;

M.     BNSF knew the stop sign was missing on the north side of the Porche Prairie Crossing and failed to instruct the Amtrak engineer operating the Train to stop and flag the Porche Prairie Crossing as required by BNSF's rules;

N.     BNSF failed to provide a flagman at the Porche Prairie Crossing to warn motorists of oncoming trains in light of the missing stop sign and defective signage;

O.     BNSF failed to warn motorists and train passengers of the dangerous characteristics of the Porche Prairie Crossing, including the obstructed sight lines, steep vertical grade, the severe angle, and the rough crossing surface;

P.     BNSF failed to maintain the approach to the Porche Prairie Crossing because BNSF created and allowed a steep vertical hill to exist on each side of the Porche Prairie Crossing in violation of Missouri law, BNSF's rules, and industry standards and guidelines;

Q.     BNSF failed to close the Porche Prairie Crossing, or make proper

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

efforts to close the Crossing, despite determining around the time period of 2005 that the Porche Prairie Crossing should be closed to vehicular traffic;

R.    BNSF failed to ensure the warning devices then existing at the Porche Prairie Crossing were properly installed and operating;

S.    BNSF failed to evaluate the adequacy of the existing warning devices at the Porche Prairie Crossing;

T.    BNSF failed to install and maintain adequate warning devices at the Porche Prairie Crossing;

U.    BNSF failed to install automatic lights and/or gates as warning devices at the Porche Prairie Crossing;

V.    BNSF failed to conduct a proper engineering study as required by the Manual on Uniform Traffic Control Devices ("MUTCD") to determine the appropriate signage to install at the Porche Prairie Crossing;

W.    BNSF failed to conduct a proper engineering study as required by the MUTCD to determine if stop signs were adequate warning devices at the Porche Prairie Crossing;

X.    BNSF determined, on its own, to install passive warning devices in the form of crossbucks and stop signs, instead of active warning devices, despite its decision in 2011 to either close the Porche Prairie Crossing or install automatic lights and gates at the Porche Prairie

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

Crossing;

Y.    BNSF failed upgrade the warning devices at the Porche Prairie Crossing even though it knew or should have known that the warning devices installed at the Porche Prairie Crossing were inadequate;

Z.    BNSF failed to issue a slow order due to the safety hazards at the Porche Prairie Crossing, including the missing stop sign;

AA.    BNSF maintained an unreasonably dangerous crossing, in light of a combination of known hazards, including the high track speed limit, steep vertical grade, loose gravel, angle of intersection, visual obstructions, and limited sight distance present at the Porche Prairie Crossing and right-of-way;

BB.    BNSF failed to properly maintain BNSF's Porche Prairie Crossing by allowing loose gravel to accumulate on the Porche Prairie Crossing and roadway within BNSF's right-of-way.

102.    Defendant BNSF's acts and omissions listed above constitute negligence.

103.    Defendant BNSF, acting through its agents and/or employees, including the engineer operating the Train, knew or could have known that in acting and failing to act as described in the preceding paragraphs, it was reasonably likely that people, including Plaintiffs, would be injured.

## DAMAGES

104.    Defendant BNSF breached its respective duties of care to each of the Plaintiffs and such breach of duty directly caused, or directly contributed to cause, the

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

Plaintiffs' injuries and damages.

105.    As a direct result of the aforesaid negligence of Defendant BNSF, Plaintiff Sanjay Chopra sustained severe injuries, including but not limited to severe injuries to their body and mind. On account of said injuries, Plaintiff has undergone medical care and treatment, and Plaintiff will be required to seek medical care and treatment in the future. The strength, use and function of Plaintiff's body, and general health and strength have been permanently weakened, diminished and impaired. As a result of said injuries, Plaintiff has suffered and will continue to suffer physical pain and suffering and mental anguish. Because of said injuries, Plaintiff has lost capacity for the enjoyment of life in the past and will suffer loss of capacity for the enjoyment of life in the future. Plaintiff has suffered serious, severe, and permanent physical and mental injuries, including past and future pain and suffering, property damages, past lost earnings and future loss of earnings and earning capacity, past and future medical and hospital expenses, loss of enjoyment of life, and emotional distress. These injuries and damages are permanent and progressive in nature and will continue to cause damages to Plaintiff in the future. Plaintiff Chopra claims all damages allowed by Missouri law.

106.    As a direct result of the aforesaid negligence of Defendant BNSF, Plaintiff A.K.C. sustained severe injuries, including but not limited to severe injuries to their body and mindOn account of said injuries, Plaintiff has undergone medical care and treatment, and Plaintiff will be required to seek medical care and treatment in the future. The strength, use and function of Plaintiff's body, and general health and strength have been permanently weakened, diminished and impaired. As a result of said injuries, Plaintiff has suffered and

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

will continue to suffer physical pain and suffering and mental anguish. Because of said injuries, Plaintiff has lost capacity for the enjoyment of life in the past and will suffer loss of capacity for the enjoyment of life in the future. Plaintiff has suffered serious, severe, and permanent physical and mental injuries, including past and future pain and suffering, property damages, past lost earnings and future loss of earnings and earning capacity, past and future medical and hospital expenses, loss of enjoyment of life, and emotional distress. These injuries and damages are permanent and progressive in nature and will continue to cause damages to Plaintiff in the future.  Plaintiff A.K.C. claims all damages allowed by Missouri law.

107.    As a direct result of the aforesaid negligence of Defendant BNSF, Plaintiff D.S.S. sustained severe injuries, including but not limited to severe injuries to their body and mind. On account of said injuries, Plaintiff has undergone medical care and treatment, and Plaintiff will be required to seek medical care and treatment in the future. The strength, use and function of Plaintiff's body, and general health and strength have been permanently weakened, diminished and impaired.  As a result of said injuries, Plaintiff has suffered and will continue to suffer physical pain and suffering and mental anguish. Because of said injuries, Plaintiff has lost capacity for the enjoyment of life in the past and will suffer loss of capacity for the enjoyment of life in the future. Plaintiff has suffered serious, severe, and permanent physical and mental injuries, including past and future pain and suffering, property damages, past lost earnings and future loss of earnings and earning capacity, past and future medical and hospital expenses, loss of enjoyment of life, and emotional distress. These injuries and damages are permanent and progressive in nature and will continue to

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

cause damages to Plaintiff in the future. Plaintiff D.S.S. claims all damages allowed by Missouri law.

### COUNT II – NEGLIGENCE
**(Defendant MS Contracting)**

108. Plaintiffs hereby incorporate by reference each and every preceding paragraph contained in Plaintiffs' First Amended Petition as if fully stated herein.

### LEGAL THEORIES AND CONCLUSIONS OF LAW

109. Barton was the employee and/or agent of Defendant MS Contracting and Defendant MS Contracting is liable for the negligent actions of Barton which directly contributed to cause this derailment and the Plaintiffs' injuries and damages.

110. Under the doctrines of vicarious liability and *respondeat superior*, Defendant MS Contracting is responsible and liable for the negligence of its employees and agents, including its driver Barton, who are acting within the course and scope of their employment with Defendant MS Contracting.

111. Barton was acting within the course and scope of his employment with Defendant MS Contracting when the subject collision and derailment occurred.

112. Defendant MS Contracting owed a duty of care to Plaintiffs to operate the Dump Truck in a reasonably safe manner and with the highest degree of care.

113. In addition to BNSF's negligence and knowledge of the dangerous characteristics of its Porche Prairie Crossing, Defendant MS Contracting breached its respective duties of care to the Plaintiffs in the operation of the Dump Truck over BNSF's Porche Prairie Crossing, and such breach of duty directly contributed to cause the Train

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

Wreck and Derailment, and Plaintiffs' injuries.

114.    Defendant BNSF, as the owner of the Porche Prairie Crossing, the right-of-way property around the Porche Prairie Crossing, and the entity responsible for the maintenance of the Porche Prairie Crossing, was negligent in its maintenance of the Porche Prairie Crossing, but such negligence on the part of Defendant BNSF did not and does not fully absolve Defendant MS Contracting from its negligence and duties of care owed to Plaintiffs.

115.    BNSF was negligent in using reasonable care to maintain its Porche Prairie Crossing. In the alternative to the negligence of Defendant BNSF, Defendant MS Contracting was itself negligent in the operation of the Dump Truck over the Porche Prairie Crossing by failing to operate the Dump Truck in a reasonably safe manner and by failing to yield the right-of-way to the oncoming Train.  This allegation is made in addition to the negligence of Defendant BNSF.  Defendant BNSF had the legal duty to keep its grade crossing reasonably safe for travelers.  Defendant BNSF was itself negligent in failing to properly maintain the Porche Prairie Crossing in a reasonably safe manner that would allow for the public to safely traverse the Porche Prairie Crossing and not be put in danger, to include passengers on a train, and specifically Plaintiffs.

116.    In the alternative to the negligence of Defendant BNSF in creating and maintaining an unreasonably dangerous railroad crossing with a skewed angle, an illegally steep approach, limited sight distance and sight obstructions, failing to install automatic lights and/or gates, and the failure to stop the Train and Flag the Crossing due to the missing stop sign, Defendant MS Contracting was itself negligent by its actions and/or inactions in

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

the operation of the Dump Truck while attempting to cross the Porche Prairie Crossing, which directly contributed to cause the Train Wreck and Derailment, and the injuries and damages to Plaintiffs.

117.   Under Missouri law there can be more than one proximate cause for a train wreck and derailment.  In addition to the negligent acts of Defendant BNSF directly causing or directly contributing to cause the train wreck and derailment on June 27, 2022, Plaintiffs allege that Defendant MS Contracting was also a direct and proximate cause of the Train Wreck and Derailment, which directly caused or directly contributed to cause the injuries and damages to Plaintiffs.

118.   Under Missouri law there can be more than one proximate cause for a train wreck and derailment.  In addition to the negligent acts of Defendant BNSF directly causing or directly contributing to cause the Train Wreck and Derailment on June 27, 2022, Plaintiffs allege that as a direct and proximate result of the negligent acts and omissions of Defendants, Plaintiffs have suffered serious, severe, and permanent physical and mental injuries, including past and future pain and suffering, property damages, past lost earnings and future loss of earnings and earning capacity, past and future medical and hospital expenses, loss of enjoyment of life, and emotional distress.  These injuries and damages are permanent and progressive in nature and will continue to cause damages to Plaintiffs in the future.  Plaintiffs claim all damages allowed by Missouri law.

119.   As a direct result of the aforesaid negligence of Defendant BNSF and Defendant MS Contracting, Plaintiff Sanjay Chopra sustained severe injuries, including but not limited to severe injuries to their body and mind. On account of said injuries,

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

Plaintiff has undergone medical care and treatment, and Plaintiff will be required to seek medical care and treatment in the future. The strength, use and function of Plaintiff's body, and general health and strength have been permanently weakened, diminished and impaired.  As a result of said injuries, Plaintiff has suffered and will continue to suffer physical pain and suffering and mental anguish. Because of said injuries, Plaintiff has lost capacity for the enjoyment of life in the past and will suffer loss of capacity for the enjoyment of life in the future. Plaintiff has suffered serious, severe, and permanent physical and mental injuries, including past and future pain and suffering, property damages, past lost earnings and future loss of earnings and earning capacity, past and future medical and hospital expenses, loss of enjoyment of life, and emotional distress.  These injuries and damages are permanent and progressive in nature and will continue to cause damages to Plaintiff in the future.  Plaintiff Chopra claims all damages allowed by Missouri law.

120.    As a direct result of the aforesaid negligence of Defendant BNSF and Defendant MS Contracting, Plaintiff A.K.C. sustained severe injuries, including but not limited to severe injuries to their body and mindOn account of said injuries, Plaintiff has undergone medical care and treatment, and Plaintiff will be required to seek medical care and treatment in the future. The strength, use and function of Plaintiff's body, and general health and strength have been permanently weakened, diminished and impaired.  As a result of said injuries, Plaintiff has suffered and will continue to suffer physical pain and suffering and mental anguish. Because of said injuries, Plaintiff has lost capacity for the enjoyment of life in the past and will suffer loss of capacity for the enjoyment of life in the future.

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

Plaintiff has suffered serious, severe, and permanent physical and mental injuries, including past and future pain and suffering, property damages, past lost earnings and future loss of earnings and earning capacity, past and future medical and hospital expenses, loss of enjoyment of life, and emotional distress.  These injuries and damages are permanent and progressive in nature and will continue to cause damages to Plaintiff in the future.  Plaintiff A.K.C. claims all damages allowed by Missouri law.

121.    As a direct result of the aforesaid negligence of Defendant BNSF and Defendant MS Contracting, Plaintiff D.S.S. sustained severe injuries, including but not limited to severe injuries to their body and mind. On account of said injuries, Plaintiff has undergone medical care and treatment, and Plaintiff will be required to seek medical care and treatment in the future. The strength, use and function of Plaintiff's body, and general health and strength have been permanently weakened, diminished and impaired.  As a result of said injuries, Plaintiff has suffered and will continue to suffer physical pain and suffering and mental anguish. Because of said injuries, Plaintiff has lost capacity for the enjoyment of life in the past and will suffer loss of capacity for the enjoyment of life in the future. Plaintiff has suffered serious, severe, and permanent physical and mental injuries, including past and future pain and suffering, property damages, past lost earnings and future loss of earnings and earning capacity, past and future medical and hospital expenses, loss of enjoyment of life, and emotional distress.  These injuries and damages are permanent and progressive in nature and will continue to cause damages to Plaintiff in the future.  Plaintiff D.S.S. claims all damages allowed by Missouri law.

Electronically Filed - CHARITON - April 02, 2025 - 01:53 PM

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury under the provisions of Mo. Sup. Ct. Rule 69.01.

Dated: <u>April 2, 2025</u>                    Respectfully submitted,

**DAVIS, BETHUNE & JONES, LLC**

By   */s/ Grant L. Davis*
    Grant L. Davis,       MO# 34799
    Scott S. Bethune,    MO# 35685
    Thomas C. Jones,    MO# 38499
    Wes Shumate,      MO# 60396
    John S. Carroll,     MO# 69031
    Kathyrn T. Frazen,   MO# 76616
    1100 Main Street, Suite 2930
    Kansas City, Missouri 64105
    Tel.:   (816) 421-1600
    Fax.:   (816) 472-5972
    gdavis@dbjlaw.net
    sbethune@dblaw.net
    tjones@dbjlaw.net
    wshumate@dbjlaw.net
    jcarroll@dbjlaw.net
    kfrazen@dbjlaw.net

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April, 2025, the foregoing was electronically filed with the Clerk of the Court via the Court's e-Filing system.

    */s/ Grant L. Davis*
    *Attorney for Plaintiff*